Heirs of J. Serrallés, Petitioners and Appellees, *v.* Rafael Sancho Bonet, Treasurer of Puerto Rico, Defendant and Appellant. Heirs of J. Serrallés, Petitioners and Appellants, *v.* Rafael Sancho Bonet, etc., Defendant and Appellee.

Nos. 7182 and 7152. Argued February 19, 1939.—Decided January 18, 1938.

B. *Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for defendant, appellant and appellee. *F. Parra Capó* and *Leopoldo Tormes García,* for petitioners, appellees and appellants.

MR. JUSTICE WOLF delivered the opinion of the court.

The following facts were agreed upon by the parties in the trial court and served as the basis for its judgment.

On December 31, 1919, the Sucesión Serrallés, henceforth to be referred to as "the taxpayer", paid the Treasurer of Puerto Rico the sum of $30,407.08, in satisfaction of its income tax for the taxable year 1917–1918. By the Treasurer this tax was reduced to $15,375.28, and after an appeal to the Board of Review and Equalization, further reduced to $14,840.20 The overpayment of $15,566.88 was then refunded to the taxpayer. As the taxpayer was not satisfied, on reconsideration by the Board the tax was finally fixed at $10,700.96. On the 22nd of September, 1924, the Treasurer informed the taxpayer, in writing, that the balance of $4,139.24 would be refunded to it as soon as the necessary requirements of law (*trámites de ley*) should be complied with.

On October 31, 1919, the same taxpayer filed its income tax return for the taxable year 1918–19 wherein its tax was computed at $31,466.04. This amount was paid, under protest, in two installments, one on May 19, 1920, and the other on September 15, 1920. After a deficiency assessment by the Treasurer and a subsequent appeal to the Board of Review and Equalization, the taxpayer was held to be indebted

to the Treasurer in the additional amount of $14,426.08. On. January 22, 1923, the taxpayer effected a partial payment of $7,213.04 on the above unfavorable balance. Subsequently it moved for a reconsideration from the Board, as a result of which the Treasurer was charged with having collected, in excess, the sum of *$6,077*. On *September 22, 1924,* he informed the taxpayer, in writing, that the above sum ($6,077) would be refunded to the taxpayer when the necessary legal requirements were fulfilled. *On December 18th* of the same year the Treasurer finally determined said excess payment and notified the taxpayer on December 23rd and the local Collector of Internal Revenue at Ponce on December 18th, that the amount would be returned to the taxpayer directly by the Department.

Difficulties also arose between the Treasurer and the taxpayer with respect to the income tax for the year 1919–20, and one additional month in 1920. The Sucesión Serrallés originally filed an income-tax return, for the 13 months, of $173,346.48. This amount was paid in four installments, one on October 24, 1921, another on February 7, 1923, and the other two on March 12, 1923.

In the meantime deficiency assessments of $143,764.60 for the 12 month's period and $28,833.48 for the additional term were imposed by the Treasurer. After an appeal to the Board of Review and Equalization the unfavorable balance for the longer period was reduced to $41,101.96 and that for the shorter period to $17,870.72. On January 2, 1923, the taxpayer, *under protest,* satisfied $10,326.87 on account of the $41,101.96 and $4,490.02 on account of the $17,870.72. As the outcome of a reconsideration by the Board an excess payment by the taxpayer for the year 1919–20 of $44,118.17 was found to exist. This sum has been agreed upon by the parties. *On April 9, 1924,* the Treasurer wrote the taxpayer that the above amount could be refunded as soon as form No. 40 was filled out and returned. Subsequently, credits of $7,371.90 and $22,595.08 were granted to the taxpayer on

income taxes for the years 1923 and 1924 which reduced the excess payment for 1919–20 to $14,151.19. These credits were conceded pursuant to an agreement between the parties.

In this state of affairs the taxpayer, on February 26, 1926, requested that the amount of a special income tax for the year 1924 be deducted from the balance to his credit. This operation was refused because the Auditor of Puerto Rico on March 1, 1926, had required the Treasurer to discontinue any further credits to the Sucesión Serrallés on the ground that an investigation by the Auditor's department had revealed that the taxpayer owed the People of Puerto Rico $82,346.34. The People of Puerto Rico filed suit to recover this amount in 1926 and had judgment rendered against it, which became final in October 1933.

On November 6, 1933, the taxpayer wrote the Treasurer requesting the return of the *$24,367.43*, which had been pending since February 1926, and *for the first time* demanded the computation of interest on the above amount.

It must be inserted here, for whatever significance it may have, that on April 2, 1929, the taxpayer had solicited the computation and refund of its excess payments for the years 1917–18, 1918–19, and 1919–20 in accordance with the final award of the Board of Review and Equalization which bore dates of January 7th and August 12th of 1924, supra. The Treasurer refused to do this on the excuse that there was a suit pending between the People of Puerto Rico and the same taxpayer over income taxes for those very years and that he had to await its outcome. In view of this, on the 11th of April, 1929, the taxpayer filed a *mandamus* against the Treasurer and the Auditor for the immediate computation and return of those overpayments. This suit was finally dismissed by the District Court on February 2, 1932, for lack of prosecution.

On April 18, 1934, the Treasurer sent forms No. 40 to be filled out by the taxpayer for the refund of $4,139.24 (1917–18), $6,077 (1918–19) and $14,151.19 (1919–20). These

forms were never returned because the taxpayer wanted to be allowed interest on these amounts.

On October 18, 1934, the Treasurer informed the appellee that from that date it had the above amounts at its disposal and that they would be refunded as soon as the forms were returned.

On October 17, 1934, the taxpayer filed the suit in *mandamus* which is now before us wherein it requested that the Treasurer be ordered to credit its income tax for the year 1933 which summed up to $34,931.73, to the balance appearing in favor of the taxpayer amounting to $24,367.43 plus the sum of $17,596.46 representative of interest at 6 per cent from date of payment to April 18, 1934. It also demanded the award of legal interest on this total sum, i. e. $41,963.89, from April 18, 1934, to its final payment or credit. In the alternative it requested the immediate refund of the $41,963.89.

The court below granted the sum of $24,367.43 plus interest at 6 per cent per annum from the date of its illegal collection until October 18, 1934. Both parties have appealed, separately. We are now considering the appeal of the Treasurer.

Many of the details of the controversy will be elaborated in discussing the separate assignments.

 The first five errors may be grouped into one, inasmuch as the issue presented by each turns upon an identical point. The precise question to be determined is the exact date or dates upon which the Treasurer of Puerto Rico made his final award of a refund or credit to the taxpayer of the various amounts stated above, i. e. $44,118.17 subsequently reduced to $14,151.19; $6,077; and $4,139.24 totalling $24,367.43. The lower court held that this final decision took place on October 18, 1934, when the Treasurer notified the Sucesión Serrallés that it had the above sums at its disposal to be refunded as soon as the taxpayer filled out and returned a certain blank (No. 40) to the department. Appellant, on

the other hand, contends that the decision of the Treasurer came on *April 9, 1924,* as to the sum of $44,118.17 later reduced to $14,151.19 corresponding to the excess payment for the year 1919–20 and on *December 18, 1924,* as to the amounts of $6,077 (amount in excess collected for the year 1918–19) and $4,139.24 (overpayment for the year 1917–18).

The record squarely supports the conclusion that on April 9, 1924, the Treasurer notified the taxpayer that it had a favorable balance with regard to its income-tax payments for the year 1919–20 of $44,118.17, which amount would be refunded as soon as form No. 40 was filled out. It is no less evident that on May 31, 1924, and in response to a written request by the taxpayer of May 26, 1924, the Treasurer set off or deducted from the above sum the amount of $7,371.90 for income taxes for the year 1923. This operation was effected pursuant to a prior agreement between the Treasurer and the taxpayer to the effect that the $44,118.17 should remain on deposit with the Treasurer to be used as a credit fund from which future income taxes could be deducted. On August 28,1924, a similar transaction took place with regard to the sum of $22,595.08 which represented income taxes for the year 1924. These two deductions left a balance with the Treasurer in favor of the taxpayer amounting to *$14,151.19.* We find it difficult to hold, as did the trial court, that with regard to these $44,118.17 or the part thereof for which the taxpayer received no credit, the Treasurer made no final award of refund until October 18, 1934. The above circumstances speak for themselves. The treasurer determined the overpayment on April 9, 1924, and immediately took the necessary steps for its refund directly by the department. Subsequently came the agreement, which we may call a credit agreement, and then the specific credits. We have no doubt, without considering later events, that on April 9, 1924, the taxpayer had it in its power, by a mere stroke of the pen, to collect or recover the $44,118.17. At that time the Income Tax Act of 1919, as amended in 1921, was in force.

Such statutes had no provision for the concession of interest on refunds or credits of excess or overpayments. Thus it is evident that, had nothing else intervened, the taxpayer would have been gradually credited with the above amount and would have had no right to the payment of interest.

It is no less clear that on December 18, 1924, the Treasurer finally determined the overpayments for the taxable years 1917–18 and 1918–19 to have been $4,139.24 and $6,077 respectively, and took the necessary steps for their definite refund to the taxpayer. Subsequently, an agreement took place or was ratified with regard to these amounts similar to that reached with respect to the overpayment for the year 1919–20. At this date the state of the law likewise did not permit the granting of interest on these amounts. Although no actual deductions were made pursuant to this agreement it is no less true that they could have been requested had the taxpayer so chosen. The concession of the credit or refund was, at least temporarily, complete on December 18, 1924.

Under all the circumstances, we hold that the court erred in deciding that there was no final award of refund of the amounts of $4,139.24 and $6,077 until October 18, 1934. Regardless of what was to follow there was, on December 18, 1924, a definite offer of payment by the Treasurer of $4,139.24 and $6,077.

The sixth, seventh, eighth, and ninth assignments of error are related to each other and refer to the holding of the lower court with regard to the right of the taxpayer to claim and receive interest pursuant to the provisions of Section 79 of Act No. 74 of August 6, 1925. (Laws of 1925, p. 542.) For a proper discussion of these assignments we must go back to February, 1926. At that time it must be remembered, the taxpayer requested from the Treasurer that the sum of $16,174.70 (special income tax for the year 1924) be deducted from the amounts already determined to be receivable from the Treasurer. The record shows that on March 1, 1926, the Auditor of Puerto Rico informed the

Treasurer that after an investigation by the former's office, the Sucesión Serrallés appeared to be the debtor of the Treasury in the amount of $82,346.34 for income taxes corresponding to the years 1918, 1919 and 1920. He requested that no further credits or deductions be granted to said taxpayer. In accordance with this letter the Treasurer denied the credit which on February 26, 1926, had been solicited by the taxpayer.

In June 1926, the People of Puerto Rico filed suit against the *Sucesión Serrallés* to collect the $82,346.34. While this suit was pending, the taxpayer, on April 2, 1929, requested a refund of the $24,367.43 which had been settled back in 1924 and against which balance the Treasurer had refused to credit (after it had conceded two prior credits) in 1926, the amount of the special 1924 income tax as per agreement, supra. This petition was denied because of the pendency of the suit filed by the People of Puerto Rico at the instance of the Auditor. The taxpayer, as we have said, then filed a suit in *mandamus* to obtain the return of the balance still owing, which was dismissed in 1932 for lack of prosecution. The taxpayer, apparently, did not choose to press his claim. The year 1933 brought the final judgment against the People of Puerto Rico in the litigation instituted by it, as a result of the Auditor's investigation in 1926. Then it was, in November of 1933, that the taxpayer made his first request for the payment of interest.

The lower court held that the appellee was entitled to interest on the principal sum in accordance with the provisions of Sections 64, 75 and 79 of Act No. 74 of 1925. It is the correctness of this pronouncement that is impeached by the appellant in this second series of errors.

The applicable parts of the said sections read:

"Section 64.—(a) Where there has been an overpayment of any income or excess-profit tax imposed by this Act, or by Income Tax Act No. 59 of 1917, Income Tax Act No. 80 of 1919, and Income Tax Act No. 43 of 1921, or any such Act as amended, the amount

of such overpayment shall be credited against any income or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

". . . . . . . . . .

"Section 75.—The Treasurer is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; and shall make report to the Legislature of Porto Rico at the beginning of each regular session of all transactions under this section.

"Section 79.—Upon the allowance of a credit or refund of any income or excess-profits tax, erroneously or illegally assessed or collected, or of any pecuniary penalty collected without authority or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum from the date such tax, pecuniary penalty, or sum was paid to the date of the allowance of the refund, or in case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment, then to the date of the assessment of that amount. The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part."

Under the conclusion reached by us in the course of the discussion of the first five errors the Act of 1925 would ordinarily be inapplicable, for it is the statute in force at the time a refund or credit is allowed which governs the matter of interest. This proposition of law is accepted by both parties and is sustained by the jurisprudence.

Up to the year 1926 there was a status quo established between the Treasurer and the taxpayer by which the latter could have withdrawn in the form of a credit any amount owing to him, without objection by the Treasurer, but in the said year 1926 the Treasurer, at the instance of the Auditor, changed his position and it became impossible for the taxpayer either to obtain his money or use it as a credit for current taxes.

Now it is true that under the holding of the *Fajardo Sugar Company of Porto Rico* v. *F. G. Holcomb, Auditor,* 16 F. (2d) 92, neither the Treasurer nor the Auditor had a right legally to withhold these funds, yet, the Treasurer did in fact act upon the advice of the Auditor. Of course, the taxpayer might have brought a suit by mandamus or otherwise, to force the Treasurer to pay the amount then pending, but ordinarily no duty arises in a person to bring a suit to enforce a right.

The credit had been allowed in 1924, but in 1926 the Treasurer refused to pay or apply the amount collected. This action of the Treasurer either directly or by necessary implication, we think, brought the taxpayer within the provisions of Section 79, supra. It was equivalent to an appropriation or conversion by the Treasurer and hence a wrongful collection or withholding as of that date, and the Act of 1925 may be said to be applicable directly, that is to say in 1926.

However, whether it was directly applicable or not, the action of the Treasurer was, from the standpoint of the law, unjustifiable and interest should run from the date of the withholding without the consent of the taxpayer. There is no doubt that the taxpayer was deprived of making use of $24,367.43.

█ Under the position we have taken the mandamus was applicable not only for the recovery of the principal sum, which is not challenged, but also for the payment of the interest from 1926, the date on which the Treasurer decided to withhold the said twenty-four thousand dollars. The interest became a part of the principal sum and was just as much subject to the application of the writ of mandamus as any other amount.

The parties have filed very extensive briefs and have cited, among others, cases from the Supreme Court of the United States, some of them saying that interest was payable under the particular statutes in question from the date

of the wrongful withholding or payment. It is unnecessary to cite or distinguish cases because of the special nature of the case before us.

The tenth assignment of error raises the proposition that inasmuch as the right to interest was not a clear legal right, the writ of mandamus was not the proper remedy. Under the circumstances of this case we think that the taxpayer's right to legal interest on the money witheld from him was substantially clear.

The next error concerns the granting of interest over the period which elapsed after the date on which the refund was originally granted. This assignment has been sufficiently covered by our preceding discussion.

The twelfth and thirteenth assignments raise both the defense of prescription and of laches. The special situation here involved and the broad view we have taken of it leaves no room for the application of either defense.

The last five errors were either not committed or their discussion has been rendered superfluous by the position adopted by us in the course of this opinion.

■ The plaintiff and taxpayer, also appealed, and assigns two errors. They are as follows:

"1. The lower court erred in holding that the petitioner was entitled to the payment of interest at the rate of 6% per annum on the sums of $4,139.24, $6,077.00 and $14,151.19, which represent income taxes paid in excess for the years 1918, 1919 and 1920, respectively, from the date of their unlawful collection by the Treasurer of Puerto Rico until October 18, 1934, and not until the date upon which the defendant should pay these amounts to the petitioner.

"2. The lower court erred in not imposing costs in this proceeding upon the defendant, the Treasurer of Puerto Rico."

It was on April 18, 1934, that the Treasurer informed the taxpayer in writing that as soon as it should fill out a certain application, its excess payment of $24,367.43 would be refunded. We feel that no interest on the principal sum should

be conceded after that time inasmuch as the refund was officially granted on that date.

As to the matter of costs we are inclined to follow the discretion exercised by the lower court, especially as we are of the opinion that there was no fault or temerity on the part of the Treasurer. The question of interest was a debatable one as can be seen from the above discussion.

The judgment should be modified to give the plaintiff the principal sum, with interest at the rate of 6 per cent per annum from February 26, 1926, to April 18, 1934, and as modified affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.